ALVIN A. CHRISTIANSEN, APPELLANT, V. DENNIS MOORE, APPELLEE, DAIRYLAND MUTUAL INSURANCE COMPANY, GARNISHEE-APPELLEE.

ELSIE CHRISTIANSEN, APPELLANT, V. DENNIS MOORE, APPELLEE, DAIRYLAND MUTUAL INSURANCE COMPANY, GAHNISHEE-APPELLEE.

172 N. W. 2d 620

Filed November 28, 1969. Nos. 37238, 37239.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellants.

Cobb, Swartz & Wieland and William A. Ahlstrand, for garnishee-appellee.

Francis McLane, for appellee Moore.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a garnishment action by plaintiffs Alvin A. Christiansen and Elsie Christiansen, individual judgment creditors of Dennis Moore, against the garnishee, Dairyland Mutual Insurance Company, the insurer on an automobile liability insurance policy issued to Dennis Moore. The garnishee filed answers denying indebtedness and denying that Moore had insurance coverage with the garnishee. Applications were filed praying for a determination of the liability of the garnishee. Answers to the applications specifically denied insurance coverage. A jury trial was requested by plaintiffs and denied, and the cases were tried by the court. The district court found for the garnishee and released and discharged it, and the plaintiffs have appealed.

On September 15, 1965, Dennis Moore obtained liability insurance on a 1955 Chevrolet through the N. P. Dodge Company. The policy covered liability only, and the garnishee, Dairyland Mutual Insurance Company, was the insurer. Moore was a substandard risk and so classified. The premium was charged on that basis.

The policy contained what is referred to as an "automatic insurance" clause which provided that the word "automobile" meant: (1) the described automobile, (2) trailer, (3) temporary substitute automobile, and "(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named Insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named Insured and such spouse on the date of its delivery, and (ii) the named Insured or such spouse notifies the company within thirty days following such delivery date. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named Insured or such spouse has other valid and collectible insurance. The named Insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

In the fall of 1965, Dennis Moore was involved in an accident and the 1955 Chevrolet was "totaled," and was later sold for junk. In early November 1965, Moore purchased a 1957 Mercury, which he traded for a 1962 Ford in April 1966. On July 4, 1966, Moore was involved in the accident out of which the plaintiffs' judgments against him arose. He was driving the 1962 Ford. The 1962 Ford was totally destroyed in the accident. On August 5, 1966, Moore purchased a 1957 Ford. He drove the 1957 Ford until January of 1967. On the 21st of January 1967, he purchased a 1956 Chevrolet.

Premiums were paid on the insurance policy for the period from September 15, 1965, to February 15, 1967, as reflected by renewal certificates of Dairyland Mutual Insurance Company. The renewal certificates show the car year as 1955 on all renewal certificates except for the renewal certificate for the period of November 15, 1966, to February 15, 1967, which shows the car year as 1957. The records of N. P. Dodge Company show a

change of automobile endorsement from a 1955 Chevrolet to a 1957 Ford effective August 26, 1966, and an endorsement changing the 1957 Ford to a 1956 Chevrolet on January 28, 1967. They do not show any endorsement or change of automobile between the original date of the policy and the endorsement of August 26, 1966.

Dennis Moore testified that he did not himself report the accident to the 1955 Chevrolet in October of 1965, but thought that his father handled it. Exhibit 11 shows that the garnishee knew of the accident by October 29, 1965, but not from Dennis. Dennis Moore had not himself notified the insurance agency of any change of automobiles until July 25, 1966.

Clarence Moore, the father of Dennis Moore, testified that he had notified N. P. Dodge Company by telephone that his son, Dennis, had acquired the Mercury within 30 days after its acquisition in November of 1965, and gave them all the information that they asked for. He also testified that within 3 or 4 days after the purchase of the 1962 Ford in April 1966, he called the N. P. Dodge Company about the purchase, and gave them the information they asked for. He also testified that he notified the N. P. Dodge Company within 10 days after the acquisition of the 1957 Ford in August 1966, but did not recall having notified anyone in connection with the purchase of the 1956 Chevrolet in January 1967.

The writing agent testified that he did not remember receiving any phone calls from Clarence Moore about the 1962 Ford. The office supervisor of N. P. Dodge Company testified that she had never received a call from Dennis Moore or Clarence Moore, his father, between September 1965, and July 1966, advising of a change of vehicle; that there were no notes on any change of cars in the file; and that she was unaware of any notice on change of cars being lost or misplaced. It was also stipulated that two witnesses employed in the insurance department of N. P. Dodge Company from June 1965, through September 1966, would testify that

they did not receive any notice of change of cars from Dennis or Clarence Moore relating to vehicles owned and operated by Dennis Moore.

The district court made specific fact findings including a finding that: "At no time prior to July 4, 1966 was any notice given by Dennis Moore, or anyone acting for him or on his behalf, to either Dairyland Mutual Insurance Company or N. P. Dodge Insurance Agency or any of their officers, agents or employees, of his purchase of either the 1957 Mercury or 1962 Ford automobiles, or of the October, 1965 accident."

The district court also determined that the effect of the "newly acquired automobile" clause in the policy is to extend its coverage to benefit the insured, and that before the insured may have that benefit, it is necessary that he comply with the notice requirements or, at least, that they be substantially complied with. The district court's judgment released and discharged the garnishee.

The plaintiffs' first major contention is that even in the absence of any notice of the change of automobiles, the insurer may not avoid liability on the policy unless the breach of the notice requirement contributed to the loss. They rely on section 44-358, R. R. S. 1943, the concluding sentence of which provides: "The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

The testimony of underwriters was essentially that the primary concern in underwriting automobile liability insurance, particularly for substandard risks, was the insured driver, but that a very high-powered car or a "souped-up" car would also be material to the risk. The particular cars involved here did not fall in that category. We believe the evidence established that the

change of vehicles involved here did not affect the risk.

Nevertheless, we are unable to find any authority to support plaintiffs' position that where no notice is ever given, and the accident occurred more than 30 days following delivery of the replacement car to the insured, the insured is still entitled to recover if the insurance company was not prejudiced. Courts have been unanimous in denying recovery under such circumstances. Various grounds have been relied on, although no one of them is entirely satisfactory. Thompson v. Dairyland Mutual Ins. Co., 30 Wis. 2d 187, 140 N. W. 2d 200 (1966), is illustrative of the position of many courts. In response to a contention that the insurance company must show some prejudice before it could be relieved from liability on the policy, the court said: "But this is not a case of a claimed breach of a policy provision perpetrated by the insured. Rather, it is the failure of the insured to perform a requirement of a provision of the policy, i.e., to give notice of a change of vehicle, in order to gain coverage of a different vehicle under the policy. It is not a question of discontinuing coverage because of some act by the insured that breaches his contract; rather, it is the insured's failure to do some act that is required to bring about coverage. By his failure to give proper notice, Levy was not insured by the subject policy at the date of the accident. Thus, the breach cases are not in point at all."

In any event, the authorities unanimously agree that where no notice is given, there is no coverage of the replacement automobile with respect to accidents occurring after the prescribed period has elapsed. See, 7 Blashfield, Automobile Law and Practice, Insurance, § 316.6, p. 672; 7 Am. Jur. 2d, Automobile Insurance, § 100, p. 408; Annotation, Automobile Insurance—Substituted Cars, 34 A. L. R. 2d 936, § 7, p. 943; 7 Appleman, Insurance Law and Practice, § 4293, p. 84.

Under the "automatic insurance" provision before us, coverage extends to a replacement automobile as defined

in the policy for 30 days following the delivery, in all events, irrespective of notice; but where notice is not given prior to the accident, there is no coverage with respect to accidents occurring after the 30-day period has elapsed.

The plaintiffs also assign as error the action of the trial court in denying the plaintiffs' requests for a jury trial on the factual issues in the garnishment proceedings. At the conclusion of the evidence, the garnishee specifically requested the court to make special findings of fact as to the issue of whether or not notice was given. The amended answer of the garnishee specifically denied that any notice was given. The court did make findings of fact. There can, therefore, be no doubt that a factual issue was presented, at least on the issue of notice.

Section 25-1030.02, R. R. S. 1943, provides in part: "The trial of the determination of the liability of the garnishee shall be conducted the same as in a civil action."

Article I, section 6, of the Constitution of Nebraska, provides in part: "The right of trial by jury shall remain inviolate . . .."

The applicable rule is stated in an annotation, 19 A. L. R. 3d, Issues in Garnishment as Triable to Court or to Jury, 1393, at page 1398, as follows: "Certain garnishment statutes, instead of specifically stating that the jury shall determine issues of fact, broadly provide that issues in garnishment, or certain specific issues in garnishment, shall be tried in the same manner as similar issues are tried in any other civil action. Accordingly, under such statutes, where the issue is one which is proper for jury determination, it has been held or recognized that there must be a jury trial if demanded."

In Clark v. Foxworthy, 14 Neb. 241, 15 N. W. 342, this court stated: "If the garnishee make any legal or equitable claim to the amount in his hands, or if he insists upon his right to retain it for any lawful purpose

. . . the controversy must be determined by action, as in garnishment before judgment, so that the constitutional right of a jury trial, secured by sec. 6 of the Bill of Rights, may be availed of."

This conclusion is further reinforced by section 25-1030.03, R. R. S. 1943, which provides for intervention in the garnishment proceedings and requires: "If issue on such intervention or on such pleading by the defendant in the original action is joined by the plaintiff, it shall be tried with the issues as to the garnishee's liability." This would reinforce the conclusion that the trial of an issue of fact should be treated as a trial between a plaintiff and defendant. While the statute was somewhat different, the Oregon court stated in Argonaut Ins. Co. v. Ketchen, 243 Ore. 376, 413 P. 2d 613, 19 A. L. R. 3d 1386: "While a garnishment is a statutory proceeding, it is legal and not equitable in nature, and if tried as any normal issue between a plaintiff and a defendant, as required by the statute, all fact issues must be tried as in an action at law . . .. This necessarily means such issues are tried with a jury unless the parties waive a jury trial." See, also, Ruble v. Saretzke, 63 N. D. 631, 249 N. W. 716, 88 A. L. R. 1148, where the court said: "If the issue had arisen between the principal defendant and the garnishee, it would have been one triable to a jury. Hence it was likewise triable to a jury in the garnishment action."

Section 25-1104, R. R. S. 1943, dealing with civil procedure in the district courts provides: "Issues of law must be tried by the court, unless referred as provided in section 25-1129. Issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury unless a jury trial is waived or a reference be ordered as hereinafter provided."

Under section 25-1030.02, R. R. S. 1943, where material issues of fact are presented in a contested garnish-

ment proceeding, they are triable by a jury unless waived.

The garnishee contends that where the evidence is undisputed or but one reasonable inference or conclusion can be drawn therefrom, the question is one of law for the court and prejudicial error was not committed if a jury trial has not been granted. In the absence of the testimony of Clarence Moore, we might well conclude that the case was one for a directed verdict and that no prejudicial error was committed. His testimony, however, created a direct conflict in the evidence, and we cannot say that his testimony was discredited as a matter of law.

The judgment of the district court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

SPENCER, J., concurs in the result.