STATE CODE AGENCIES EDUCATION ASSOCIATION, APPELLEE, V.
STATE OF NEBRASKA, APPELLANT.
434 N.W.2d 684

Filed January 27, 1989.    Nos. 87-1060, 88-069.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder for appellant.

Mark D. McGuire, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN; GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

These two appeals were consolidated for hearing in this court. Both are appeals from orders of the Nebraska Commission of Industrial Relations (Commission) entered under the provisions of the State Employees Collective Bargaining Act, Neb. Rev. Stat. §§ 81-1369 to 81-1390 (Reissue 1987). This act was enacted as 1987 Neb. Laws, L.B. 661, and became effective on April 9, 1987. The order appealed from in case No. 87-1060 was signed by the Commission on December 4, 1987.

In case No. 87-1060, the appellee, State Code Agencies Education Association (Association), filed a petition with the Commission, alleging that the State had refused to enter into negotiations with the Association and seeking an order of the Commission directing the appellant, State of Nebraska, to "commence good faith negotiations with respect to terms and conditions of employment for members of the Association . . . ."

The State filed its answer, in which it alleged that it had not refused to enter into collective bargaining with the Association and alleged that the State, pursuant to § 81-1379, was prohibited from entering into such bargaining because

negotiations were not begun before the second Wednesday of September 1987 (September 9), and because the Association had not been certified as the exclusive bargaining agent for the teachers in question before September 9 and had not filed its petition for certification until September 30.

Simultaneously with the filing of its petition, the Association filed an "Application For a Temporary Order," in the same proceedings, seeking an order of the Commission directing the State to "forthwith" commence negotiations. A hearing was held on this application on December 1, 1987.

On December 4, 1987, the Commission issued its order directing that "the State immediately commence negotiations with the State Code Agencies Teacher Association." After so ordering, the Commission's order stated, "The Commission intends to issue no further Order in this matter since the prayer for relief contained in the Petitioner's Petition is substantially the same as in Petitioner's Application for Temporary Order." The State timely appealed to this court.

In this court, the State sets out four assignments of error, which generally present the questions whether a bargaining unit which wishes to enter into contract negotiations with an employer is required under the terms of § 81-1379 to commence negotiations before the second Wednesday in September, or whether, at the latest, the unit must initiate a representation proceeding to be filed on or before the second Wednesday in September. We reverse the order of the Commission.

The record of the hearing on December 1, 1987, shows the following. The Association is an unincorporated association which was certified by the Commission on October 28, 1987, pursuant to a representation proceeding initiated by the Association on September 30, 1987, as the exclusive collective bargaining agent for teachers employed by three State of Nebraska departments: the Department of Correctional Services, the Department of Social Services, and the Department of Public Institutions. The parties have stipulated that before October 28, 1987, the Association "was separately the certified exclusive bargaining agent for the teachers employed by the Department of Correctional Services, the teachers employed by the Department of Public Institutions,

and the teachers employed by the Department of Social Services."

The parties also stipulated that on November 2, 1987, Jerry Kriha, the Association's chief negotiator, sent a letter to Steven Torrence, the State's chief negotiator. In this letter, Kriha referred to the fact that the Association had been certified as the bargaining agent for the teachers above referred to. Attached to the letter was a copy of the Commission order of October 28, 1987, certifying the Association. Kriha requested that "bargaining begin immediately on the 1988-1989 contract."

On November 6, 1987, Torrence responded by letter to Kriha. In this letter, Torrence wrote that the State was aware of the October 28 Commission certification, but that it was the State's position that the Association was "time-barred by the language of the new State Employee's [sic] Collective Bargaining Act from bargaining with the State under it's [sic] new certification for a 1988-1989 contract."

Torrence's letter went on to say that the specific language of the new act was § 11 (codified as § 81-1379). The relevant portions of § 81-1379, as set out in the letter, were:

The Chief Negotiator [defined in § 81-1371 as "the Chief Negotiator of the Division of Employee Relations in the Department of Personnel"—Torrence, in this case] and any other employer-representative and the exclusive collective-bargaining agent shall commence negotiations on or prior to the second Wednesday in September of the year preceding the beginning of the contract period, except that the first negotiations commenced by any bargaining unit after April 9, 1987, may commence after such September date in order to accommodate any unresolved representation proceedings. All negotiations shall be completed on or before March 15 of the following year.

The letter went on to say that it was the position of the State that the only exception to § 81-1379, as to the beginning of negotiations by September 9, 1987, was for "unresolved representation proceedings initiated prior to the second Wednesday in September . . . ." (Emphasis in original.) In the case of unresolved representation proceedings, § 81-1379

provides that negotiations could commence after the September date "in order to accommodate any unresolved representation proceedings." Torrence's letter pointed out to Kriha that no representation proceedings were pending as of September 9, 1987. The Association's petition was filed November 23, 1987.

Testimony from Torrence at the hearing showed that he knew that Kriha was the director of collective bargaining for the Association "prior to the passage of LB 661 [§§ 81-1369 et seq.] but not until it became certified were they the bargaining agent for the new unit as outlined in LB 661." Torrence amplified his answer when he further testified: "[T]he State Code Agencies Education Association was still the collective bargaining agent for the vertical units that were prescribed prior to LB 661 but not for the new horizontal unit as defined in . . . Section 5 [§ 81-1373] . . . ." Torrence further testified that he and Kriha first discussed collective bargaining between the Association and the State on September 10, 1987, but that Kriha and Torrence had discussions in "early to mid-August when he [Kriha] wanted to talk about ground rules and the bargaining process."

Torrence further testified that during the "early to mid-August" discussions, he told Kriha that "before we would sit down and formally discuss with him the collective bargaining process, [the Association] needed to become the exclusive certified agent for that unit of employees."

Torrence also testified that Kriha "acknowledged that they needed to become certified, and he said he would get in contact with his attorneys to file the necessary petition."

Torrence explained that the new act had created a different situation, in that before the new act took effect on April 9, 1987, there were three separate contracts for the teachers in the three separate units represented by the Association and that before the new act the contracts were "on a vertical basis." Torrence had explained that "81-1374 prescribed the transition from the vertical to the horizontal . . . ." This explanation coincided with the introducer's statement of intent in connection with L.B. 661. That statement set out, in part, that "[t]he bill would: (1) establish occupational horizontal

bargaining units for state employees; (2) provide for historic representation rights for collective bargaining agents in the transition from vertical to horizontal units . . . ." Introducer's Statement of Intent, Committee on Business and Labor, 90th Leg., 1st Sess. (Mar. 2, 1987).

This purpose is reflected in the provision of § 81-1373 which "created twelve bargaining units for all state agencies except the University of Nebraska, the Nebraska state colleges, and other constitutional officers." Section 81-1373(1)(k) defined 1 of the 12 newly created units as "Teachers, which unit is composed of employees required to be licensed or certified as a teacher . . . ." Thus, the Association's members, constituting teachers in the Department of Correctional Services, the Department of Social Services, and the Department of Public Institutions constituted a new horizontal unit, which would have one contract with the State, rather than the situation existing before the act when each of the three units had à separate contract with the State (a vertical concept).

A new concept is established by the new act, and we can see no unfair burden on collective bargaining agents to comply fully with the new law. As set out above, § 81-1379 required that the exclusive bargaining agent "shall commence negotiations on or prior to [September 9, 1987]." The Association chose to so conduct itself that it was not established as the "exclusive bargaining agent" before September 9, 1987, nor did it bring itself within the exception to the critical date, which permitted negotiations to commence after September 9 "in order to accommodate any unresolved representation proceedings."

Neb. Rev. Stat. § 49-802 (Reissue 1988) provides:

Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter shall be as follows:

(1) When the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed.

In *Moyer v. Douglas & Lomason Co.*, 212 Neb. 680, 685, 325 N.W.2d 648, 651 (1982), we stated, "As a general rule, in the construction of statutes, the word 'shall' is considered

mandatory and inconsistent with the idea of discretion."

The clear language of § 81-1379 provides that negotiations shall commence on or before September 9, 1987. The Commission determined that " 'any (emphasis supplied) unresolved representation proceeding' may delay the commencement of negotiations, regardless of when the certification process is initiated, until a certification order is entered by this Commission." We hold that such interpretation is incorrect. We hold that the negotiations contemplated by § 81-1379 must be commenced by "the second Wednesday in September of the year preceding the beginning of the contract period," and that starting time is extended only to accommodate any unresolved representation proceedings which are pending as of the "second Wednesday" date. Such a construction is demanded by the later specific dates set out in the act, such as: "All negotiations shall be completed on or before March 15 of the following year" (§ 81-1379); "At the initiation of negotiations but no later than December 15" (§ 81-1380); "If the parties in labor contract negotiations do not reach a voluntary agreement by January 1" (§ 81-1381); "No later than January 10" (§ 81-1382); "No party shall file an appeal after March 15" (§ 81-1383); etc. The Legislature itself had clear budgetary reasons for wanting certain timeframes. Senator Jerome Warner, one of the sponsors of the bill, testified before the legislative committee considering L.B. 661 that the Legislature needed to have

> a budget figure during the course of a session, that would be realistic and one that we could address with . . . or could be comfortable with that was going to be fairly firm, and under this proposal why a budget would be a submitted by the, at least an outside numbers would be known by the Legislature and by . . . the Governor for that matter by the . . . fifteenth of . . . March and I think that that becomes exceedingly important in the long run in particular.

Committee on Business and Labor Hearing, 90th Leg., 1st Sess. 78-79 (Mar. 2, 1987). The Legislature has established precise, detailed timeframes for actions under the act in question. With full knowledge of the overall timing requirements, the Association has chosen not to initiate the specific action

necessary to start the whole proceeding. That is its right, but it may not have it both ways. Either the Association, for whatever reason, can live with the situation it finds itself in on the second Wednesday of September or the Association can claim the rights it has under the act by timely starting the procedures of the act. In this case, the Association chose not to act.

Such a construction is clearly consistent with other decisions of this court. In *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 299-300, 363 N.W.2d 362, 365 (1985), with reference to garnishment statutes, we stated:

> Garnishment is a legal, not equitable, remedy unknown at common law and is a purely statutory remedy. See, *Christiansen v. Moore*, 184 Neb. 818, 172 N.W.2d 620 (1969); *Beggs v. Fite et al.*, 130 Tex. 46, 106 S.W.2d 1039 (1937). Being in derogation of common law, garnishment statutes are strictly construed and demand compliance with all prerequisites before any remedy is available under such statutes. *Shevin v. Venderbush Company*, 280 Mich. 499, 273 N.W. 780 (1937); *Liberty Loan Corp. & Affiliates v. Eis*, 69 Wis. 2d 642, 230 N.W.2d 617 (1975).

In this case, the Legislature has enacted statutes giving rights unknown at common law and has provided procedures which allow employees of the sovereign to negotiate with the sovereign. Where a new right is afforded by statute, one who desires such a statutory right must bring himself within the provisions of the statute. See *Johnson v. Toth*, 516 N.E.2d 85 (Ind. App. 1987). Such statutes must be strictly construed. The order of the Commission directing negotiations is reversed.

With regard to case No. 88-069, the Association filed a petition with the Commission requesting a list of special masters and a motion seeking an order of the Commission "waiving mediation under §81-1381, but in the alternative if mediation under §81-1381 is mandatory and jurisdictional, request is hereby made for appointment of a mediator pursuant to such statutory provision." The proceedings in case No. 88-069 present the problems confronting the Commission if orderly statutory procedures are not followed. Section 81-1381 provides for procedures if the parties "do not reach a voluntary agreement by January 1 . . . ." The Association's motion was

filed on January 4, 1988. The Commission ordered that "[m]andatory mediation under Section 81-1381 be commenced immediately," at a time when, by statute, the voluntary, unmediated negotiations must have been completed.

Such order is an extension of the order of the Commission in case No. 87-1060. Since the Commission had no authority to enter the order it did in case No. 87-1060, the Commission order in case No. 88-069 is also without effect.

The orders of the Commission in cases Nos. 87-1060 and 88-069 are reversed. The two causes are remanded to the Commission with directions to dismiss the petition in each case.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.